J-A14041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVAN WARREN PRICE | : | |
| | : | |
| Appellant | : | No. 1666 MDA 2021 |

Appeal from the PCRA Order Entered November 29, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002809-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVAN WARREN PRICE | : | |
| | : | |
| Appellant | : | No. 1667 MDA 2021 |

Appeal from the PCRA Order Entered November 29, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002810-2017,
CP-06-CR-0002810-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVAN WARREN PRICE | : | |
| | : | |
| Appellant | : | No. 1668 MDA 2021 |

Appeal from the PCRA Order Entered November 29, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002870-2017

J-A14041-22

BEFORE: BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JUNE 3, 2022**

Appellant Evan Warren Price appeals the order of the Court of Common Pleas of Berks County denying his motion pursuant to the Post-Conviction Relief Act (PCRA).[1] Appellant argues that the PCRA court erred in finding that Appellant was not entitled to collateral relief based on his allegations that his plea counsel failed to file an appeal on his behalf or that counsel failed to adequately consult with him about filing the appeal. We affirm.

Appellant was charged in connection with his armed robbery spree of four businesses in Berks County over a three-day period in April 2017. On April 24, 2017, at approximately 4:40 p.m., Appellant entered the Tom Sturgis pretzel store in Cumru Township, held two employees at gunpoint, demanded cash, stole $381.00 from the register, and fled in a silver Nissan Rogue. Notes of Testimony (N.T.), 9/16/17, at 6.

Appellant continued his robbery spree on April 26, 2017, at approximately 2:57 a.m. at the Turkey Hill mini mart on Morgantown Road in Reading. Appellant wore a homemade mask that covered his face, held two employees at gunpoint, demanded cash, stole $140.00 from the register, and fled in a silver Nissan Rogue. *Id*.

On the same day, at approximately 5:37 p.m., Appellant entered the Medicine Shoppe pharmacy in Shillington, held one employee at gunpoint, and

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

- 2 -

demanded Adderall and Percocet. After the employee was unable to open the locked cabinet where the drugs were stored, Appellant cursed and fled the scene in a silver Nissan Rogue. The employee was able to record the license plate number of the fleeing vehicle and provided it to police.

Just minutes later, at approximately 6:07 a.m., Appellant entered the Samsonite store in Wyomissing, wore his homemade mask, held an employee at gunpoint, demanded cash, stole $178.00 in cash from the register, and fled the scene in a silver Nissan Rogue.

Based on information provided by the victims, police arrested Appellant and executed a search warrant on Appellant's silver Nissan Rogue, from which the officers recovered a loaded .22 Smith & Wesson semi-automatic pistol, a black ski cap with eye holes cut out, and clothing that matched the description of the perpetrator of the Turkey Hill robbery. The victims of the robberies in which Appellant did not wear a mask identified him as the perpetrator.

Appellant was charged on three dockets with multiple counts of robbery, theft by unlawful taking, recklessly endangering another person, terroristic threats, simple assault, receiving stolen property, firearms not to be carried without a license, and possessing an instrument of crime.

After Appellant was charged by the Berks County District Attorney's Office, the U.S. Attorney's Office notified Appellant that it had determined that Appellant's crimes were appropriate for federal prosecution due to the quantity and nature of the charges he faced. K. Kenneth Brown, Esq., the Assistant

District Attorney (ADA) prosecuting the case at the county level, also served as a special assistant U.S. attorney for the Eastern District of Pennsylvania.

In a letter dated August 11, 2017, Atty. Brown informed Appellant that if his cases were adopted for federal prosecution and Appellant was convicted of multiple counts of robbery as well as using and carrying a firearm during the commission of a crime of violence, Appellant would be subject to a "federal sentencing guidelines range of 1,035 – 1,047 months' incarceration" which included "consecutive mandatory minimum sentences of 82 years' imprisonment." Letter, 8/11/17, at 1. The letter provided statutory authority for these calculations.

However, the letter stated that if Appellant pled guilty to four counts of robbery (F1) (18 Pa.C.S.A. § 3701(1)(ii)) in the Court of Common Pleas of Berks County and agreed to a sentence of twenty to forty' years imprisonment in the state system, the U.S. Attorney's Office would agree not to adopt the case for federal prosecution. *Id*.[2]

Appellant signed the letter and agreed to pled guilty in accordance with the terms of the offer set forth in the letter. On September 6, 2017, Appellant pled guilty to one count of robbery for each crime. On the same day, the trial

---

[2] The letter cited to the decision in ***Bordenkircher v. Hayes***, 434 U.S. 357, 358, 98 S.Ct. 663, 665, 54 L.Ed.2d 604 (1978) in which the Supreme Court of the United States held that it does not violate due process under the Fourteenth Amendment of the U.S. Constitution when a prosecutor "carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged."

court sentenced Appellant to an aggregate term of twenty to forty years' imprisonment. Appellant did not file an appeal.

On April 3, 2018, Appellant filed the instant PCRA petition. The PCRA court appointed counsel, who filed a **Turner-Finley** "no-merit" letter along with a petition to withdraw. On May 1, 2019, the PCRA court granted the request to withdraw and filed notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. After Appellant filed a response, the PCRA court dismissed the petition on May 24, 2019.

On April 17, 2020, this Court vacated the dismissal of the PCRA petition and remanded the case for an evidentiary hearing as to whether counsel was ineffective in failing to file a notice of appeal. **Commonwealth v. Price**, 978 MDA 2019 (Pa.Super. 2020) (unpublished memorandum).[3]

On August 19, 2021, the PCRA court held an evidentiary hearing at which the defense offered the testimony of Appellant and his wife, Amanda Price ("Wife") and the Commonwealth presented the testimony of plea counsel, Kelly Kline, Esq.

Appellant testified that he had asked Attorney Kline to file an appeal on his behalf, but she failed to do so. Notes of Testimony (N.T.), 8/19/21, at 5. Appellant subsequently clarified that, during the plea colloquy, he had an off-the-record discussion with Atty. Kline and told her he did not want to take the

---

[3] While this Court remanded the case for the PCRA court to determine whether plea counsel was ineffective in failing to file a direct appeal, this Court also evaluated Appellant's other claims of ineffective assistance of counsel and found them to be meritless.

- 5 -

plea deal. *Id*. Appellant recalled that Atty. Kline told him that if he did not take the deal, he would face substantial charges in federal court and she could not represent him there as she did not practice in that jurisdiction. *Id*. Appellant then agreed to "take the deal." *Id*.

Appellant testified that after he had entered his plea, he asked Atty. Kline to look into an appeal to determine whether "if I do file an appeal and my guilty plea is withdrawn, if they can still come after me federally." *Id*. Appellant indicated that Atty. Kline agreed to look into the possibility of an appeal for him after he had been sentenced. *Id.* at 6-7. In addition, Appellant testified that his wife had sent Atty. Kline an email asking about the possibility of an appeal. *Id*. at 7-8. As Atty. Kline indicated that she was still looking into the appeal, Appellant believed that Atty. Kline would follow up with him in an additional communication or file an appeal. *Id*.

Appellant admitted that he did not know what relief he would seek on appeal if he was able to do so. *Id*. at 6. Appellant acknowledged that he received notification of his post-sentence rights at the time of his guilty plea, but did not really understand them. *Id*. at 7.

On cross-examination, Appellant admitted that he had signed the letter in which the U.S. Attorney's Office agreed to forgo prosecution of federal charges if Appellant tendered the plea that he entered on September 6, 2017. *Id*. at 9. Appellant also acknowledged that the letter indicated that federal prosecution would expose him to a longer period of incarceration than if he took the pleas before the trial court in Berks County. *Id*. at 9-10.

Appellant's wife, Amanda Price ("Wife"), testified that she emailed Atty. Kline on September 13, 2017, seven days after Appellant's sentencing on September 6, 2013. In the email (which was entered as an exhibit), Wife made the following inquiries:

> I spoke with [Appellant] last night and he was wondering if you were able to look into further actions or if they can come after him federally if he motions to take the sentencing to a higher court. He said you were going to look into it and let me know.
>
> Also if it is a possibility would that be something you could do and what kind of fee would there be?
>
> If you are unable to do so I received a referral from a family member for another attorney and wanted to know your opinion if that's possible and if this is something in his realm of practice. His name is Bill Bispels.

Email (Amanda Price), 9/13/17, at 1.

Wife indicated that Atty. Kline responded in a brief email on September 15, 2017, stating "I am still looking into it as I have found nothing on point. Bill Bispels is a very good lawyer." Email (Atty. Kline), 9/15/17, at 1. Wife admitted that she contacted Atty. Bispels during the same time frame that she had emailed Atty. Kline. N.T., 8/19/21, at 14-15.

The Commonwealth presented Atty. Kline as a witness at the PCRA hearing. Atty. Kline testified that when she had originally discussed the plea offer with Appellant at the Berks County Prison, Appellant became "very angry and very belligerent." *Id*. at 20. However, after Atty. Kline fully discussed the plea agreement and the potential sentence Appellant faced if he was prosecuted federally, Appellant executed the plea agreement. *Id*. at 21.

At the time Appellant entered his plea, Atty. Kline reviewed Appellant's post-sentence rights, gave him written notice of such rights, required Appellant to sign the notice, and gave Appellant a copy of the notice. *Id*. at 22-23.

After Appellant entered the plea, Atty. Kline recalled that Appellant asked if the U.S. attorney could still charge him federally if he appealed and sought to withdraw his guilty plea. Atty. Kline told Appellant that if he withdrew his plea agreement, the U.S. Attorney's plea offer would be off the table and he would face federal prosecution. *Id*. at 23-24. When Appellant responded sarcastically, "how do you know if you don't practice in federal court," Atty. Kline indicated that her response was founded in basic legal principles. However, Atty. Kline told Appellant she would "look into it" in order to "appease" Appellant. *Id*. at 24.

Atty. Kline indicated that after sentencing, she did not have contact with Appellant directly but received email correspondence from Wife. Atty. Kline testified that neither Appellant nor Wife asked her to file an appeal, and asserted that she did not enter into an agreement to represent Appellant on appeal. In addition, Atty. Kline indicated Wife told her she was going to speak to another lawyer about filing an appeal and Wife sent her other email correspondence asking for copies of Appellant's records, which Atty. Kline sent to Wife.

On November 29, 2021, the PCRA court denied Appellant collateral relief, finding he had not proven his claim of ineffectiveness of counsel. Appellant filed three separate notices of appeal.[4]

Appellant claims the PCRA court erred by "denying relief where Appellant demonstrated that he had indicated his desire to appeal to his attorney[.]" Appellant's Brief, at 3. Our standard of review is as follows:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

*Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa.Super. 2019) (quoting *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (internal citations and quotation marks omitted)).

In reviewing Appellant's ineffectiveness claim, we are guided by the following principles:

_____

[4] While each of the notices of appeal listed all three docket numbers, they were clearly distinct filings that were docketed at different times. The notices of appeal comply with Pa.R.A.P. 341, which "requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket." *Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021). *See also Commonwealth v. Johnson*, 236 A.3d 1141, 1145-46 (Pa.Super. 2020) (*en banc*) (finding single defendant appealing from multiple dockets may include multiple docket numbers on each notice of appeal, but still must file separate notices of appeal for each docket).

[a]s originally established by the United States Supreme Court in ***Strickland v. Washington****,* 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.

***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa.Super. 2014) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 600 Pa. 1, 963 A.2d 409, 419 (2009).

***Commonwealth v. Selenski***, 228 A.3d 8, 15 (Pa.Super. 2020).

Appellant asserts that plea counsel was ineffective in failing to file a direct appeal on his behalf. We first note that our courts have recognized that "the unjustified failure to file a requested direct appeal is ineffective assistance of counsel *per se* and that an appellant need not show that he likely would have succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness." ***Commonwealth v. Bath***, 907 A.2d 619, 622 (Pa.Super. 2006) (citing ***Commonwealth v. Lantzy****,* 736 A.2d 564, 571 (Pa. 1999)).

However, in order to find that counsel was ineffective *per se* for failing to file a direct appeal, "the defendant must prove that he requested an appeal and that counsel disregarded that request." ***Bath***, 907 A.2d at 622 (quoting ***Commonwealth v. Knighten****,* 742 A.2d 679, 682 (Pa.Super.1999)).

In this case, Appellant admits he did not directly ask counsel to file an appeal, but had inquired about the possibility of an appeal and asked whether

he could withdraw his plea without the possibility of facing federal charges. As Appellant failed to prove he requested that counsel file an appeal, he is not entitled to a finding of ineffectiveness *per se* pursuant to **Lantzy**.

Nevertheless, our inquiry does not end at this point. Appellant cites to the decisions in **Roe v. Flores-Ortega**, 28 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) and **Commonwealth v. Touw**, 781 A.2d 1250 (Pa.Super. 2001), which require counsel to adequately consult with the defendant as to the advantages and disadvantages of an appeal where there is reason to think that the defendant would want to appeal.

In **Flores-Ortega**, the U.S. Supreme Court evaluated whether counsel could be found ineffective for failing to file an appeal when the defendant had not clearly expressed whether he desired counsel to file an appeal. The Supreme Court started its analysis with the question of "whether counsel in fact consulted with the defendant about an appeal." **Flores-Ortega**, 28 U.S. at 478, 120 S.Ct. 1029. The Supreme Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." **Id**.

The Supreme Court clarified that if counsel had not consulted with the defendant about filing an appeal, the next question must be whether counsel's failure to consult with the defendant itself constitutes deficient performance and whether counsel had an obligation to consult with the defendant about an appeal. The Supreme Court specifically ruled that:

counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Id*. at 480, 120 S.Ct. 1029. *See also Touw*, 781 A.2d at 1254.

Turning to the instant case, we agree with the PCRA court's finding that Appellant did not demonstrate that a rational defendant would want to appeal. The PCRA court found Atty. Kline credibly testified that she had repeatedly advised Appellant and Wife of the grave consequences of filing an appeal in this case. The PCRA court found that:

[c]onsidering both the strength of the case against [Appellant] and the draconian penalties attached to the various federal statutes in question, a successful appeal would have placed [Appellant] in the unenviable position of risking a federal sentence four times longer than that which was imposed upon him pursuant to his agreement with the Commonwealth. Given Price's age at the time of the entry of the plea, the consequences of a federal prosecution were devastating, and would clearly exposed him to a sentence that he could not have possibly lived to serve. Viewing the record of this case, we fail to see how a rational defendant would have wanted to appeal the sentence, which again, would have placed [Appellant] in the significantly less desirable position of reinstated exposure to the federal charges and the appurtenant sentences upon a successful prosecution.

PCRA Court Opinion, 11/29/21, at 16-17.

However, Atty. Kline should have responded to Wife's email inquiry with a clear indication that she had concluded her evaluation, had not found any non-frivolous issues for appeal, and would not represent Appellant in a collateral appeal. Further, given the email exchange between Wife and

- 12 -

counsel, this discussion should have compelled Atty. Kline to seek clarification on Appellant's decision on whether he wished to proceed by filing a notice of appeal, even though Atty. Kline would not have represented him on appeal.

Nevertheless, our courts have held that:

[a] deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must show prejudice. The Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." [*Flores-Ortega*, 28 U.S. at] 484, 120 S.Ct. 1029.

*Touw*, 781 A.2d at 1254.

At the PCRA hearing, when asked why he wanted to appeal his sentence, Appellant admitted he had "no idea" what his goal for the appeal was, but knew that he had a right to appeal. N.T., 9/9/21, at 6. Appellant admitted that he inquired to Atty. Kline about his "chances" on appeal to "get out of the guilty plea" without being federally prosecuted.

While Appellant expressed interest in filing a notice of appeal, his expression of interest was ambiguous at best in that he indicated that he would do so only if seeking the withdrawal of his plea would not result in the reinstatement of the federal charges. Appellant refused to accept Atty. Kline's repeated advice that Appellant would face federal prosecution if he successfully withdrew his plea. Appellant did not raise in his petition or argue at the hearing that his plan was to file a timely appeal.

Moreover, Wife indicated that she was going to speak to another lawyer about the possibility of an appeal and requested copies of Appellant's records, which Atty. Kline sent to her. Wife admitted that she contacted Atty. Bispels during the same time frame that she had emailed Atty. Kline.

Thus, not only was Appellant fully aware of his appellate rights, he was discussing the possibility of an appeal with counsel other than Atty. Kline.

As a result, Appellant has not shown prejudice. **Flores-Ortega**, **supra**; **Touw**, **supra**. Accordingly, the PCRA court correctly found that Appellant was not entitled to relief on his claim of ineffective assistance of counsel.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/3/2022